UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VENABLE LLP**
151 West 42nd Street, 49th Floor
New York, New York 10036
Telephone: (212) 307-5500
Attn: Michael A. Guerra
MAGuerra@venable.com
Rishi Kapoor (admitted *pro hac vice*)
RKapoor@venable.com
Carol A. Weiner (admitted *pro hac vice*)
CWeinerlevy@venable.com
Arie A. Peled (admitted *pro hac vice*)
AAPeled@venable.com

*Counsel to Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of CD 2019-CD8 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2019-CD8, acting by and through LNR Partners, LLC, and CD 2019-CD8 SPRING STREET, LLC*

In re:

63 Spring Lafayette LLC,

Debtor.

Case No.: 26-12619 (CMG)

Chapter 11

Honorable Christine M. Gravelle

**SECURED LENDER'S RESPONSE TO THE UNITED STATES TRUSTEE'S LIMITED OBJECTION TO THE APPLICATION IN SUPPORT OF ENTRY OF CONSENT ORDER EXCUSING RECEIVER FROM COMPLYING WITH CUSTODIAL TURNOVER REQUIREMENTS AND KEEPING RECEIVER IN POSSESSION AND CONTROL OF THE MORTGAGED PREMISES AND RENTS PURSUANT TO 11 U.S.C. § 543(d)**

Wells Fargo Bank, National Association, as Trustee for the benefit of the holders of CD 2019-CD8 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2019-CD8, by and through its special servicer, LNR Partners LLC, and CD 2019-CD8 SPRING

STREET, LLC (collectively, the "Secured Lender"), by and through its counsel, Venable LLP, submits this response (the "Response") to the Limited Objection (the "Limited Objection") of the United States Trustee (the "U.S. Trustee") to the Application in Support of Entry of Consent Order Excusing Receiver From Complying With Custodial Turnover Requirements and Keeping Receiver in Possession and Control of the Mortgaged Premises and Rents Pursuant to 11 U.S.C. § 543(d) [Dkt. No. 22] (the "Application")[1] and respectfully represents as follows:

**PRELIMINARY STATEMENT**

This Application presents the quintessential scenario in which Section 543(d) of the Bankruptcy Code was intended to apply. Both the Debtor and Secured Lender have agreed that it is currently in the best interest of all parties for the Property at issue to remain in the custody and control of the Receiver—as it has been for the past ***three years***—and the Receiver has agreed to retain such custody and control. The Secured Lender is the Debtor's sole secured creditor, and no unsecured creditor has objected to the parties' Consent Order, or even appeared in this single-asset real estate case. Further, the Debtor has expressed no desire to assume immediate management of the Property, nor does it even have the means to do so, as it has no employees and no funding. In addition, the Property is hopelessly underwater, as the Secured Lender holds an over $28 million Foreclosure Judgment, while the Property was recently appraised at $14,500,000. Section 543(d) was tailor-made to provide a practical remedy in this situation and fully authorizes the Court to enter the Consent Order.

Against this backdrop, the U.S. Trustee lodges a Limited Objection asking the Court to force the Debtor to assume management and control over the Property to the detriment of all parties

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Application.

in interest. The U.S. Trustee objects on three erroneous grounds: (i) that Section 105(b)'s prohibition on *bankruptcy court* appointments of a receiver prevents the Court from allowing a *state-court* appointed receiver to remain in place pursuant to Section 543(d), (ii) that "[t]he Receiver serves the [Secured] Lender," and (iii) that "the Receiver is holding on to estate funds in excess of the FDIC limits" in a non-DIP account. These objections should be overruled.

First, the Consent Order does not provide for the appointment of a receiver by a bankruptcy court and therefore does not violate Section 105(b). Rather, the Consent Order maintains the status quo by allowing the longstanding custodian of the Property—*i.e.*, the *State Court-appointed* Receiver—to continue to "control" the Property, as explicitly permitted under Section 543(d).

Second, under New York law—which governs the Receivership Order—the Receiver "is a fiduciary and an officer of the court" who is charged with the responsibility to "preserve and protect the property for the benefit of *all persons interested in the estate*." Thus, contrary to the Limited Objection's portrayal, the Receiver does *not* "serve[] the [Secured] Lender." She is duty-bound to protect the Property for the benefit of all parties in interest.

Finally, the Receivership Order already requires receivership funds to be held in an FDIC-insured bank account—which they are. To the extent the receivership funds exceed the FDIC-insured limit, the parties will work with the Receiver and U.S. Trustee to address this issue, including by potentially segregating the funds into separate accounts so that the balance in each account is below the FDIC insurance limits, subject to complying with any procedural and legal requirements In any event, the Property's rents, including those held by the Receiver, are property of the Secured Lender pursuant to a valid and perfected absolute assignment of rents, and not property of the Debtor's bankruptcy estate.

The U.S. Trustee's Limited Objection should be overruled and the parties' Consent Order should be entered in its entirety.

## BACKGROUND

1. As set forth in the Declaration of Ana G. Nunez in Support of the Response (the "Nunez Declaration" or "Nunez Decl."), as well as in the Application, the Secured Lender is the holder of a secured commercial mortgage Loan made to the Debtor, in the original principal amount of $18.5 million. Nunez Decl. ¶¶ 4, 6. The Loan is governed and secured by, among other things, the Mortgage and Assignment of Rents. *Id.* ¶ 4, Ex. 1 (Mortgage and Assignment of Rents).[2]

2. The Mortgage and Assignment of Rents created a first-priority mortgage lien on the Property in favor of the Secured Lender's predecessor, and "unconditionally and absolutely assign[ed]" to the Secured Lender's predecessor all of Debtor's "right, title and interest as lessor in and to the Leases and Rents" associated with the Property. Nunez Decl., Ex. 1 (Mortgage and Assignment of Rents) §§ 1.1-1.2. The Mortgage and Assignment of Rents further provides that the assignment of the Property's leases and rents is "a direct, absolute and currently effective assignment and shall not constitute merely the granting of a lien, collateral assignment or a security interest or pledge for the purpose of securing the Indebtedness." *Id.* § 1.2(b). The Mortgage and Assignment of Rents is governed by the laws of the state where the Property is located, *i.e.*, New York law. *Id.* § 5.6.

3. Beginning in April 2020, less than a year after obtaining the Loan, the Debtor ceased making the monthly debt service payments and escrow deposits required by the Loan Agreement, including escrow deposits for the payment of property taxes and maintenance of

[2] Exhibits 1 through 5 to the Nunez Declaration were also submitted as exhibits to the Appraisal.

property insurance. Nunez Decl. ¶ 7; *see also* CRO Decl. [Dkt. No. 9] ¶¶ 9, 10. The Debtor has not made any debt service payments in over six years. Nunez Decl. ¶ 16.

4. As a result of the Debtor's failure to make the escrow deposits required under the Loan, as well as its failure to pay the Property's taxes, water and sewer charges, and insurance premiums directly, beginning in July 2020 and continuing until shortly after the appointment of the Receiver in June 2023, the Secured Lender was repeatedly compelled to make advances for property taxes, water and sewer charges, and insurance premiums to protect the Property from a tax lien sale or the expiration of its insurance coverage. *Id.* ¶ 8.

5. In February 2022, due to Debtor's ongoing defaults and failure to maintain the Property, the Secured Lender commenced the Foreclosure Action in the State Court and later sought the appointment of a receiver to manage the Property. *Id.* ¶ 9. In June 2023, the State Court entered the Receivership Order appointing Jacklene M. Chesler of Colliers International as the Receiver, and in November 2023 the State Court entered the Secondary Appointments Order, authorizing the Receiver to retain and pay the fees and expenses of additional professionals to assist her in managing and protecting the Property. *Id.* ¶¶ 10-11, Ex. 2 (Receivership Order), Ex. 3 (Secondary Appointments Order).

6. According to the Receivership Order, the Receiver is directed to, among other things, "demand, collect and receive . . . all the rents and license fees," "institute and prosecute suits for the collection of rents," "deposit all monies received by him/her into any FDIC-insured bank account," "from time to time rent and lease any part of the premises for terms not exceeding five (5) years," "keep the premises insured against loss by damage or fire," "pay the taxes, assessments, water rates, sewer rates . . .and other charges," and undertake similar actions to

preserve and protect the Property and maximize its value. Nunez Decl., Ex. 2 (Receivership Order) at 2-4.

7. In June 2025, the State Court entered the Foreclosure Judgment against the Debtor in the amount of $28,125,967.56, plus interest from October 2024 until the date title to the Property is transferred, as well as costs and fees. Nunez Decl. ¶ 12, Ex. 4 (Foreclosure Judgment). The Property's foreclosure sale was scheduled to occur on March 10, 2026, at 2:15 p.m, but was stayed by the filing of the Debtor's Chapter 11 petition at 2:02 p.m. on the day of the foreclosure sale. Nunez Decl. ¶ 13, Ex. 5 (Notice of Sale).

8. As of January 2026, the Property has been valued at $14,500,000. Nunez Decl. ¶ 14, Ex. 6 (Appraisal). Accordingly, the Property—which is the Debtor's sole asset—is at least $13.6 million underwater, and interest on the debt continues to accrue at the rate of over $4,000 per day. *Id.* ¶¶ 15-16.

9. The Receiver has been in possession and control of the Property and collecting its rents for nearly three years prior to the Petition Date, while the Debtor has neither been in possession nor control of the Property nor been involved in its day-to-day operations during that time, and has no employees to take over immediate management of the Property. *Id.* ¶ 17; *see also* Application ¶ 17.

10. The Debtor and Secured Lender have requested that the Receiver maintain the status quo at the Property at this time pursuant to the terms of the Consent Order, and the Receiver has agreed to do so. None of the Debtor's other purported creditors has appeared in this Chapter 11 case, and no creditor has objected to entry of the Consent Order.

**THE COURT SHOULD OVERRULE THE U.S. TRUSTEE'S LIMITED OBJECTION AND ENTER THE PARTIES' CONSENT ORDER**

**A. Section 543(d) of the Bankruptcy Code Empowers this Court to Enter the Consent Order, and Section 105(b) of the Bankruptcy Code is Inapplicable**

11. Pursuant to Section 543(d), where the "interests of creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of" the Debtor's property, the Court "may excuse compliance" with Section 543's turnover and other requirements. 11 U.S.C. § 543(d)(1). Here, the Debtor and Secured Lender have agreed that entry of the Consent Order pursuant to Section 543(d) is in the best interest of all parties-in-interest.

12. Nevertheless, the U.S. Trustee argues that Section 105(b)'s prohibition on *bankruptcy court* appointments of a receiver prevents this Court from authorizing the Receiver at issue—who was appointed pre-petition pursuant to a *state court* Receivership Order—to continue possessing and managing the Property in accordance with Section 543(d). Limited Objection ¶¶ 17-18. Not so.

13. As Judge Beatty explained in *In re 400 Madison Ave. Ltd. P'ship*:

> [W]hile "the bankruptcy court is expressly prohibited from appointing a receiver" under Section 105(b), it "***can continue a prepetition receiver's appointment under [Section] 543(d)(1)***. . . . The legislative history . . . states that [Section] 543(d) . . . is in the nature of abstention . . . [and] lets the court suspend the provisions of the Code that contemplate a Chapter 11 debtor in possession will manage and operate so much of its property as is in the hands of a receiver at the filing date.

213 B.R. 888, 894-895 (Bankr. S.D.N.Y. 1997) (emphasis added). Indeed, Judge Beatty noted that "[a]s a matter of practice, ***in single asset real estate cases*** before this judge, ***the receiver is generally left in possession when the receivership is well-established***." *Id.* at 896 n.16 (emphasis added). And such receivers are tasked with "***manag[ing] and preserv[ing] the property in [their] charge in accordance with the orders governing [their] appointment***." *Id.* at 895 (emphasis

added). Thus, contrary to the U.S. Trustee's contention, Section 543(d) indisputably authorizes this Court to enter the parties' Consent Order.

14. Further, as explained in the Application, in determining whether the interests of creditors are better served by granting Section 543(d) relief to keep a pre-petition receiver in possession and control of property, courts consider several factors including, among other things, the length of the time the receiver has acted under the receivership order, the receiver's performance, the likelihood of the debtor's reorganization, whether there is funding to provide adequate protection, and whether turnover would be injurious to creditors' interests. *See* Application ¶ 23; *Dill v. The Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994) (affirming bankruptcy court order excusing receivers from turning over property to debtor pursuant to Section 543(d)(1)); *In re Packard Square LLC*, 575 B.R. 768, 778-79 (Bankr. E.D. Mich. 2017) (same); *In re LCL Income Props., L.P. VI*, 177 B.R. 872, 876 (Bankr. S.D. Ohio 1995) (excusing receiver from turnover after finding that "[b]y leaving matters in the status quo as it has existed for more than two years, debtor will have the opportunity to reorganize contemplated by the bankruptcy laws, and at the same time the interests of creditors will be protected.").

15. The facts of this case clearly demonstrate that the interests of creditors are best served by keeping the Receiver in place and allowing her to continue managing the Property:

- The Property has been under the custody and management of the Receiver for nearly three years. Nunez Decl. ¶ 17.
- The Debtor and Secured Lender consented to the Receiver's continued management of the Property pursuant to the Consent Order, the Debtor has identified few creditors other than the Secured Lender, and no creditor has objected to the Consent Order.[3]

[3] Even assuming the proofs of claim filed against the Debtor so far would all be allowed claims, the amount of such claims ($55,375.54) is dwarfed by the Secured Lender's over $28 million secured claim.

- The Debtor has not identified any funding prospects that would enable it to pay Property expenses or provide adequate protection to Secured Lender if turnover were to occur. *See, e.g.*, Petition ¶ 13 ("After any administrative expenses are paid, no funds will be available to unsecured creditors.").

- Prior to the receivership, the Debtor failed to pay property taxes, water and sewer charges, and insurance premiums for the Property, compelling the Secured Lender to repeatedly advance funds to protect the Property. Nunez Decl. ¶ 8.

- The Debtor has no employees to manage the Property. Application ¶ 17.

Any management transition from the Receiver to the Debtor would be costly to the estate, degrade the Property's operations, and would likely cause delay, needless disruption (and possibly confusion) among vendors and tenants. Forcing the Receiver to turnover the Property would therefore be injurious to creditors, costly to the estate, and would jeopardize the value of the Debtor's only asset. The Debtor has consented to the relief in the Consent Order. This should be given particular weight by the Court, because the Debtor itself recognizes that the factors for excusing the Receiver from complying with the turnover requirements have been met. On the other hand, maintaining the *status quo* and having the Receiver continue to manage the Property benefits the creditors, the estate and all other stakeholders. The Debtor has not managed the Property in years, has no employees to operate the Property, and has no funds to maintain and preserve the Property. Keeping the Receiver in possession and control of the Property makes an abundance of sense and is the only way to protect creditors' interests.

**B. Contrary to the U.S. Trustee's Claim, the Receiver Does Not Serve the Secured Lender**

16. The U.S. Trustee also objects to the Consent Order based on its mistaken belief that the Receiver is solely charged with serving the interests of the Secured Lender. That is incorrect as a matter of law. Under New York law, the Receiver is an independent fiduciary of the court and does not serve the Secured Lender. *See Coronet Capital Co. v. Spodek*, 279 A.D.2d 600, 602

(2d Dept. 2000) ("A receiver is a fiduciary and an officer of the court who acts at its direction and on its behalf"). In other words, a receiver acts in a quasi-judicial capacity which has been described as "the hand of the court." S*ee Copeland v Salomon*, 56 N.Y.2d 222, 228 (N.Y. 1982); *Wells Fargo Bank, N.A. v. Walsam*, 2024 NY Slip Op 31547, 2024 WL 1887617 (Sup. Ct. N.Y. Cnty., Apr. 26, 2024). The Receiver's allegiance is to the court and she is charged with the responsibility to "preserve and protect the property for the benefit of *all persons interested in the estate*." *Bank of Tokyo Trust Co. v. Urban Food Malls Ltd.*, 229 A.D.2d 14, 30 (1st Dept. 1996) (emphasis in original) (internal citation and quotation marks omitted).

**C. Section 345 Does Not Bar Entry of the Parties' Consent Order**

17. The U.S. Trustee's final objection to the Consent Order is that the current receivership account does not comply with Section 345 of the Bankruptcy Code because the receivership funds exceed the FDIC-insured limit. Limited Objection ¶¶ 3, 19. This is not a basis to deny entry of the Consent Order.

18. To the extent the receivership funds exceed the FDIC-insured limit, the parties will work with the Receiver and U.S. Trustee to address this issue, including by potentially segregating the funds into separate accounts so that the balance in each account is below the FDIC insurance limits, subject to complying with any procedural and legal requirements. Nonetheless, the Secured Lender submits that the U.S. Trustee's objection is misplaced, as the rents belong to the Secured Lender and are not property of the estate.

19. Under Third Circuit law, rents that are absolutely and unconditionally assigned to a lender pre-petition in accordance with the state law governing the assignment become the lender's property and are not part of the debtor's bankruptcy estate. *See In re Jason Realty L.P.* 59 F.3d 423 (3rd Cir. 1995) (holding rents assigned to lender pre-petition were not property of the debtor's bankruptcy estate).

20. Here, the Mortgage and Assignment of Rents is governed by New York law and provides that the Debtor absolutely and unconditionally assigned the rents, licenses and proceeds generated by the Property to the Secured Lender at the time the Mortgage and Assignment of Rents was executed. *See* Ex. 1 (Mortgage and Assignment of Rents) §§ 1.1-1.2(b) (Borrower "unconditionally and absolutely assigns" to Secured Lender's predecessor all "right, title and interest as lessor in and to the Leases and Rents," and the assignment is "a direct, absolute and currently effective assignment and shall not constitute merely the granting of a lien, collateral assignment or a security interest or pledge for the purpose of securing the Indebtedness.").

21. Courts in the Southern District of New York, where the Property is located, have held that where the assignment of leases and rents is absolute and unconditional, and the assignee has taken sufficient steps to enforce its assignment—such as by commencing a foreclosure action and obtaining the appointment of a receiver—the rents are not property of the debtor's bankruptcy estate, but rather are lender's property. *See Soho 25 Retail, LLC v. Bank of America (In re Soho 25 Retail, LLC)*, 2011 Bankr LEXIS 1257, *7 (Bankr. S.D.N.Y. Mar. 31, 2011) (Lender took "sufficient affirmative steps toward asserting its interest" (e.g., foreclosure action, appointment of receiver, scheduled foreclosure sale prepetition) to vest it with entitlement to rents under New York law.); *see also BNF NY Realty, LLC v. Nissan Motor Acceptance Corp.*, 2019 U.S. Dist. LEXIS 9631, *22 (S.D.N.Y. Jan. 9, 2019) (Explaining *Soho*, and finding that steps such as commencing a foreclosure action and filing a notice of pendency are sufficient to enforce an assignment of rents); *641 Ave. of the Ams. Ltd. Partnership v. 641 Assocs.,* 189 B.R. 583 (S.D.N.Y.1995) (holding assignee took sufficient affirmative steps to obtain enforceable interest in rents).

22. In *Soho*, the lender had obtained an absolute and unconditional assignment of rents at the time it executed the loan, the borrower had defaulted, and the lender had commenced a foreclosure action and obtained appointment of a receiver. The court concluded that "until the Mortgage and Note here are satisfied, the rents are not property of the Debtor's estate and cannot be used by the Debtor to fund a plan of reorganization." *Soho 25 Retail, LLC,* 2011 Bankr LEXIS 1257 at *9 (citing *Jason Realty*). Similarly here, the Secured Lender has obtained the appointment of a receiver and also has as a judgment of foreclosure. Accordingly, the rents generated by the Property are the Secured Lender's property, not property of the estate, and are not subject to section 345 of the Bankruptcy Code.[4]

[*Remainder of page intentionally left blank*]

[4] Notably, even if this Court were to conclude that the rents are property of the estate, the Debtor would be unable to use the rents absent the Secured Lender's consent. Pursuant to the Mortgage and Assignment of Rents, if the rents have not been transferred to the Secured Lender, then they are the Secured Lender 's cash collateral. Absent the Secured Lender's consent, the Debtor cannot use the rents without first providing adequate protection of the Secured Lender's interest in the cash collateral. *See* 11 U.S.C. §§ 363 (c)(2) and (e). Given that the Debtor has no equity in the Property, has no other assets, and conducts no other business, there is no way for the Debtor to provide adequate protection to the Secured Lender, and the Secured Lender does not intend to consent to the use by the Debtor of its cash collateral. As such, whether the rents constitute property of the estate or not, the *Debtor* will be unable to use the rents to pay finance this case or fund a reorganization. Clearly, it is in the creditor's best interests for the Receiver to stay in possession of the rents and use them to pay the costs of maintaining the Property and preserving its value.

## CONCLUSION

For all of the foregoing reasons, the U.S. Trustee's Limited Objection should be overruled, the Consent Order should be entered in its entirety, and the Court should grant such other and further relief as is just and proper.

Dated: New York, New York
May 8, 2026

Respectfully submitted,

**VENABLE LLP**

By: */s/ Michael A. Guerra*

Michael A. Guerra
Rishi Kapoor (admitted *pro hac vice*)
Carol A. Weiner (admitted *pro hac vice*)
Arie A. Peled (admitted *pro hac vice*)
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone: (212) 307-5500
Fax: (212) 307-5598
maguerra@venable.com
rkapoor@venable.com
cweinerlevy@venable.com
apeled@venable.com

*Counsel for Secured Lender*