**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260 Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| 63 Spring Lafayette LLC, | Case No. 26-12619 (CMG) |
| Debtor. | |

**APPLICATION TO EMPLOY NORTHGATE REAL ESTATE GROUP, LLC AS THE DEBTOR'S REAL ESTATE ADVISOR**

63 Spring Lafayette LLC (the "Debtor"), the debtor and debtor-in-possession, as and for its application (the "Application")[1] for an order in the above-captioned chapter 11 case, substantially in the form attached hereto as Exhibit A, approving the retention of Northgate Real Estate Group, LLC ("Northgate"), as real estate advisor for the Debtor's property located at 63 Spring Street, New York, NY 10012 (the "Property"), pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy

[1] Capitalized terms used but not immediately defined herein shall have the meanings assigned to them elsewhere in the Application.

Procedure (the "Bankruptcy Rules"). In support of this Application, the Debtor refers the Court and interested parties to the Declaration of Greg Corbin in Support of the Application (the "Corbin Declaration") attached hereto as Exhibit B, and further respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding within this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.

## BACKGROUND

4. On [ ] (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or committee has been appointed in this case.

## RELIEF REQUESTED

7. By this Application, pursuant to section 327 of the Bankruptcy Code, the Debtor seeks to employ and retain Northgate as the real estate advisor for the Debtor's Property pursuant to the terms of Northgate's agreement with the Debtor (the "Retention Agreement"), attached hereto as Exhibit C. Considering the circumstances of this case, the Debtor requires the services of a skilled real estate advisor with extensive experience with real estate.

8. As the Debtor's real estate advisor for the Property, Northgate will assist in the proposed marketing and sale, refinancing, or other disposition of the Property. The Debtor

believes Northgate's retention is necessary given the Debtor's need to sell or refinance the Property in a prompt, efficient and cost-effective manner.

**SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE**

9. Pursuant to the terms of the Retention Agreement, Northgate will use its commercially reasonable efforts to, among other things, market and sell, arrange refinancing for, or otherwise dispose of the Property on such terms as are acceptable to the Debtor. Northgate will negotiate the business terms of each purchase and sale agreement on behalf of the Debtor, subject to the Debtor's review and approval. Northgate will cooperate with other licensed real estate brokers representing purchasers subject to the terms of the Retention Agreement.

10. The services that will be rendered by Northgate in connection with the proposed engagement are not duplicative of the services to be performed by any of the Debtor's other retained professionals or advisors. The Debtor believes the foregoing services are critical to the success of the potential sale of the Property.

**NORTHGATE'S QUALIFICATIONS**

1. As set forth in more detail in the Corbin Declaration, Northgate is well-suited to provide the real estate services required by the Debtor. Northgate is a licensed real estate broker in and by the State of New York with significant experience in the marketing and sale of real property. From 2019 to date, Northgate's brokers have been the top bankruptcy brokerage team in New York, and the Tri-State area, and arranged for the sale, workout, or recapitalization of 189 buildings, development sites, membership interests, or loans. These totaled approximately 6.7 million square feet, or BSF, with an aggregate asset/debt value of over $2,700,000,000.00. Northgate has been retained in a substantial number of bankruptcy cases and is well known in the real estate and legal communities. As a result, the Debtor believes Northgate will be able to effectively and efficiently market and dispose of the Property.

**PROFESSIONAL COMPENSATION**

2. As detailed in the Retention Agreement, upon the sale of a Property, subject to review and approval by the Bankruptcy Court of a fee application by Northgate, Northgate will be paid an aggregate commission (the "Commission") which will be computed as follows:

Northgate will be paid a commission equal to three percent (3%) of the gross purchase price of the Property upon the occurrence of any of the following events:

i. Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the closing occurs after the expiration of the Term and regardless of whether the Debtor engages a different broker or advisor to close a transaction. The commission will be paid by the successful purchaser, in the form of a buyer's premium, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property; or

ii. If a sale, exchange, or other conveyance of the Property or ownership or control of the Property is made or takes place within the "Additional Period" of 180 days after expiration of the Term to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but with whom Northgate has negotiated concerning the Property, or to whose attention the Property has been brought by Northgate, or who was introduced to Debtor by Northgate during the Term, or to a credit bidder. For these purposes, a "Prospective Purchaser" shall include

partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management, or beneficial interest, the commission will be paid by the Debtor.

For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle Northgate to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, Northgate will be entitled to a commission pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.

Notwithstanding the foregoing, if Lender is the successful purchaser by bidding all or a portion of its claim and closes on the purchase, Lender agrees to pay Northgate a commission equal to two and one half percent (2.5%). If any assignee of Lender not affiliated with Lender is the successful purchaser and/or closes on the purchase of the Property, then the assignee must pay the buyer's premium equal to three percent (3%) of the gross purchase price for this property.

In connection with any resolution other than a sale, including any settlement, reinstatement, workout, modification, restructuring, refinancing, deed in lieu of foreclosure, or payoff of the loan (each, a “Resolution), Northgate will be paid a flat fee equal to three hundred thousand dollars ($300,000), payable by Debtor.

3. Thus, as more fully described in the Retention Agreement, Northgate is entitled to the following compensation under the Retention Agreement: (i) a three percent (3%) buyer’s premium if the Property is sold, (ii) a two and one half percent (2.5%) commission if the secured creditor closes on a credit bid transaction (and a three percent (3%) buyer’s premium if an unaffiliated assignee of

Lender closes), (iii) a flat fee of three hundred thousand dollars ($300,000) in connection with any Resolution other than a sale, including any settlement, reinstatement, workout, modification, restructuring, refinancing, deed in lieu of foreclosure, or payoff of the loan.

4. The Debtor seeks approval of the Retention Agreement pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The terms of the Retention Agreement were negotiated in good faith and at arms-length between the Debtor and Northgate and reflect the Debtor's evaluation of the value and expertise of the work to be performed by Northgate.

5. The Debtor further submits that Northgate's compensation is reasonable in light of the substantial benefit Northgate's services confer on the estate regardless of the form of the ultimate transaction. Through a comprehensive marketing process, including broad outreach, advertising, and a competitive auction or bidding process, Northgate establishes price discovery and a market-tested valuation of the Property. This process frequently produces value for the estate not only through a sale, but also by prompting the secured lender or a third party to refinance, pay off, or otherwise resolve the Loan on terms favorable to the estate that would not have been available absent Northgate's efforts. Accordingly, the Debtor submits that Northgate's fee in connection with a refinancing or other Resolution is reasonable and warranted, as it reflects the same marketing, valuation, and negotiation work that drives a sale and confers a comparable benefit on the estate.

**<u>DISINTERESTEDNESS</u>**

6. The Debtor seeks approval of the fee arrangement under the Retention Agreement and authority to retain and employ Northgate as its real estate advisor in connection with the sale or other disposition of the Property in this chapter 11 case under section 327(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an

interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties . . ." 11 U.S.C. § 327(a).

7. To the best of the Debtor's knowledge, and as set forth in more detail in the Corbin Declaration, and subject to the disclosures made therein, Northgate (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (b) does not hold or represent an interest adverse to the Debtor or the Debtor's estate.

8. Furthermore, except as disclosed in the Corbin Declaration, Northgate has indicated that based on the results of its research conducted to date, and to the best of its knowledge, neither it, nor any of its employee providing the services to the Debtor under the Retention Agreement, has any connection with the Debtor, any creditors of the Debtor's estate, or any other parties-in-interest or their respective attorneys and accountants, or other advisors, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee.

9. Northgate is not owed any amounts by the Debtor as of the Petition Date and does not hold a claim against the Debtor's estate. Northgate has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Corbin Declaration, it will promptly disclose such information to this Court, the Debtor and the U.S. Trustee.

10. The Debtor has also been advised that Northgate has not agreed to share with any person or firm, other than its own principals and employees, the compensation to be paid by the Debtor for the professional services rendered in connection with this case.

## FEE APPLICATION REQUIREMENTS

11. The Debtor respectfully submits that inasmuch as Northgate's compensation is results oriented and directly related to benefits received by the Debtor's estate as a result of the transactions contemplated under the Retention Agreement, requiring Northgate to file detailed

time records and periodic fee applications in accordance with sections 330 and 331 of the Bankruptcy Code, and in compliance with Bankruptcy Rule 2016, and the Court's Administrative Orders governing guidelines for fees of professionals, is unnecessary under the circumstances. The Debtor has been advised by Northgate that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

12. As set forth herein, Northgate is being retained and will be employed by the Debtor to perform a highly specialized and discrete task and, accordingly, will not be compensated based upon time expended. Instead, Northgate will be compensated based on a percentage of the proceeds of any final transaction consummated in connection with the Property. Requiring Northgate to record and submit detailed time entries in light of the nature of the services to be rendered by Northgate and the percentage-based fee proposed under the Retention Agreement would be unduly burdensome to Northgate. The Debtor further acknowledges and agrees that the ultimate benefit to the Debtor's estate from Northgate's services likely could not be measured merely by reference to the number of hours to be expended by Northgate's professionals in the performance of such services. Accordingly, the Debtor requests that Northgate be relieved of the requirement to maintain detailed time records in any fee application filed by Northgate.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A approving the retention of Northgate as real estate advisor and granting such other and further relief as the Court may deem just and proper.

Dated: July 6, 2026

**A.Y. STRAUSS LLC**

By: /s/ Eric H. Horn
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax (973) 533-0127

*Counsel to the Debtor and*
*Debtor in Possession*

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260 Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re:<br><br>63 Spring Lafayette LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-12619 (CMG) |

**ORDER AUTHORIZING THE RETENTION OF NORTHGATE REAL ESTATE GROUP, LLC AS REAL ESTATE ADVISOR PURSUANT TO SECTION 327(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(A)**

The relief set forth on the following pages two (2) through four (4) is hereby **ORDERED**.

Upon the application (the "Application")[1] of 63 Spring Lafayette LLC, the above captioned debtor (the "Debtor"), for an order, pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to retain Northgate Real Estate Group, LLC ("Northgate"), as real estate advisor for the Debtor's property located at 63 Spring Street, New York, NY 10012 (the "Property") all as more fully set forth in the Application; and upon the Declaration of Greg Corbin (the "Corbin Declaration"), annexed to the Application as Exhibit B; and it appearing that the Court has jurisdiction to consider the Application and the relief requested herein; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being satisfied based on the representations made in the Application and the Corbin Declaration that Northgate is a "disinterested" person with the meaning of sections 101(14) and 327(a) of the Bankruptcy Code; and that the relief requested in the Application is in the best interests of the Debtor, its creditors, and all parties-in-interest; and it appearing that due and appropriate notice of the Application has been given under the circumstances; and it appearing that no other or further notice need be given; and after due deliberation; and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED**, that

1. The Application is granted to the extent set forth herein.

2. In accordance with section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Debtor is hereby authorized to employ and retain Northgate as its real estate advisor

1 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

on the terms set forth in the Application, the Corbin Declaration, and the Retention Agreement annexed as Exhibit C to the Application.

3. The terms and conditions of the Retention Agreement are reasonable, and Northgate's retention and compensation thereunder are hereby approved pursuant to section 328(a) of the Bankruptcy Code.

4. Northgate is excused from maintaining or submitting detailed time records in connection with any application for compensation or reimbursement in this case.

5. All commissions, fees, and expenses payable to Northgate under the Retention Agreement, to the extent unpaid, shall constitute allowed administrative expense claims of the Debtor's estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

6. To the extent the Application, the Retention Agreement or the Corbin Declaration is inconsistent with this Order, the terms of this Order shall govern.

7. Northgate shall seek compensation for its services and reimbursement of its expenses upon application to the Court, and upon notice and a hearing, pursuant to 11 U.S.C. §§ 328(a), 330 and 331, Bankruptcy Rule 2016, the applicable Local Bankruptcy Rules, and the Guidelines of the Office of the United States Trustee, and subject to the terms of this Order.

8. Northgate's retention and compensation, including its entitlement to a Commission, a Reinstatement or Workout fee, and a Resolution fee and the rates and fee structure set forth in the Retention Agreement, are approved under section 328(a) of the Bankruptcy Code and shall not be subject to re-evaluation under the standard of section 330. The right of the United States Trustee and any party-in-interest to object, in connection with any application by Northgate for payment, solely to the reasonableness of the amount sought in the particular case is preserved; provided that no such objection shall challenge Northgate's entitlement to its Commission, Reinstatement or

Workout fee, or Resolution fee, or the applicable rates, which are fixed and approved under section 328(a).

9. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Maria A.G. Harper, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re:<br><br>63 Spring Lafayette LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-12619 (CMG) |

**DECLARATION OF GREG CORBIN ON**
**BEHALF OF NORTHGATE REAL ESTATE GROUP**

GREG CORBIN declares as follows pursuant to 28 U.S.C. § 1746:

1. Northgate Real Estate Group, LLC ("Northgate"), is a New York limited liability company with offices at 1633 Broadway, 46th Floor, New York, New York 10019.

2. This declaration (the "Corbin Declaration") is submitted in support of the application (the "Application")[1] of 63 Spring Lafayette LLC LLC the debtor and debtor-in-possession (the "Debtor"), for an order approving the retention of Northgate as real estate advisor for the Debtor's property located at 63 Spring Street, New York, NY 10012 (the "Property") pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3. Unless otherwise stated, the facts set forth herein are based on my personal knowledge, information, and belief.

4. I am the President of Northgate Real Estate Group, a brokerage and advisory firm with specific focus on bankruptcy, restructuring, foreclosures, loan sales, and workouts.

5. Northgate is experienced and qualified to represent the Debtor in connection with the sale of the Property for the reasons set forth below.

6. From 2019 to date, Northgate's brokers were the top bankruptcy brokerage team in New York, and the Tri-State area, and arranged for the sale, workout, or recapitalization of 189 buildings, development sites, membership interests, or loans. These totaled approximately 6.7 million square feet, or BSF, with an aggregate asset/debt value of over $2,700,000,000.00

7. During my career, I have received numerous awards, the most current including:

- *RED Distressed Asset Broker of the Year (2025)*
- *BankruptcyData Ranked #1 Bankruptcy, Foreclosure, and Restructuring Brokerage in NY, Tri-State, and top nationwide (2024 and 2025)*
- *Crain's Most Influential People in Real Estate (2023, 2024, 2025)*
- *RED Bankruptcy Broker of the Year (2023 and 2024)*
- *CoStar Top 10 PowerBrokers in New York City (2020, 2022, 2023, 2024)*
- *Connect CRE Top 5 Brokers in New York and the Tri-state Region (2022 and 2025)*
- *New York Real Estate Journal Real Estate Industry Leader (2020, 2023, 2024, and 2025)*
- *NYREJ Commercial Real Estate Visionary (2021, 2022, 2024)*
- *IE Magazine Inspiring Leader (2022-2024)*
- *Property IDX Broker of The Year (2022)*
- *Sonoture Broker of the Year (2021)*

8. Over the past decade I have been a featured speaker at many bankruptcy and distressed real estate events. Most recently, the 2025 Real Deal conference, 2025 Menorah Miami, 2024 IMN Distressed Forum for Bank Special Assets, the 2024 American Bankruptcy Institute ASM, the 2024 Real Estate Deal CRE Conference, the 2024 Trepp Distressed CRE Symposium, the 2023 Financial Poise CREW, the 2023 PCON Real Estate Conference, the 2023 Beard Group Distressed Investing Conference, and the 2023 Debtwire Restructuring Forum.

9. Northgate's agents have been involved in over $4.3 billion in commercial real estate transactions. They have substantial experience in the marketing and sale of commercial real property and are well-qualified to provide real estate services to the Debtor. Northgate is a licensed real estate broker in and by the State of New York and was established to provide unmatched service and results in the distressed real estate arena. Northgate utilizes a team of professionals who are involved in the marketing and disposition of the properties they sell, rather than a single agent working to sell a property.

10. Northgate's agents specialize in multifamily and mixed-use apartment buildings, office, hotel, retail, industrial, and development sites. Accordingly, Northgate will be able to effectively market the Real Property. Northgate is willing to act as real estate advisor to market and sell the building and to render the necessary professional service required in connection with same.

11. The conditions of Northgate's retention by the Debtor for the sale of the Debtor's Property are set forth in that certain retention agreement dated as of June 30, 2026 attached to the Application as Exhibit C (the "Retention Agreement"), which terms and conditions are summarized therein.

12. I have reviewed the creditor matrix and claims register in this case provided by Debtor's counsel. To the best of my knowledge insofar as I have been able to ascertain, Northgate: (a) does not hold any interest materially adverse to the Debtor's estate; (b) has no connection with the Debtor, its creditors or other parties in interest herein; and (c) is a "disinterested person" within

the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b). Northgate is not involved with any party-in-interest listed on the creditor matrix and claims register and has no conflicts of interest. Further, Northgate has no relationship with any entity, attorney or financial advisor who has appeared in this case that would be materially adverse to the Debtor in this case.

13. Neither I nor the professionals of Northgate working on this engagement, to the best of my knowledge after reasonable inquiry, have any relationship with the Debtor, the United States Bankruptcy Judge assigned to this Chapter 11 Case, the U.S. Trustee, or any persons employed by the U.S. Trustee.

14. I do not believe that Northgate is a "creditor" with respect to any fees and expenses of the Debtor within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the Northgate team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtor.

15. Consequently, to the best of my knowledge, Northgate is "disinterested" as that term is defined in Bankruptcy Code section 101(14) as modified by Bankruptcy Code section 1107(b), because:

i. neither of Northgate, nor any professional at Northgate working on this engagement is or was a creditor, equity security holder, or insider of the Debtor;

ii. neither of Northgate nor any professional at Northgate working on this engagement is or was, within two (2) years before the Petition Date, a director, officer, or employee of the Debtor; and

iii. Northgate has no interest materially adverse to the interests of the estate or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor.

16. As part of its diverse practice, Northgate appears in cases, proceedings and transactions involving many different professionals, including attorneys, financial advisors, and creditors, some of which may represent or be claimants and/or parties in interest in this case.

17. If Northgate discovers additional information requiring disclosure, Northgate will file supplemental disclosures with the Court as promptly as possible. In the event any new facts or relationships subsequently are discovered during the pendency of this case, Northgate will supplement this Corbin Declaration and file the same with the Court.

18. Northgate's compensation is fully set forth in the Retention Agreement. As more fully described in the Retention Agreement, subject to review and approval by the Bankruptcy Court of a fee application by Northgate, Northgate is entitled to the following compensation under the Retention Agreement: (i) a three percent (3%) buyer's premium in the case of a sale, (ii) a two and one half percent (2.5%) commission if the secured lender closes on a credit bid transaction (and a three percent (3%) buyer's premium if an unaffiliated assignee of Lender closes), (iii) a flat fee of three hundred thousand dollars ($300,000), to be paid by Debtor, in connection with any Resolution other than a sale — including, without limitation, a settlement, reinstatement, workout, restructuring, refinancing, deed in lieu of foreclosure, or payoff of the Loan.

19. I have read the Application and, to the best of my knowledge, information, and belief, the contents of said application are true and correct.

20. To the best of my knowledge, information and belief, Northgate has not entered and will not enter into any agreement prohibited by section 155 of Title 18 of the United States Code or Bankruptcy Rule 2016 (b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: July 6, 2026
New York, New York

________________________
Greg Corbin

**Exhibit C**

NORTHGATE
REAL ESTATE GROUP

RETENTION AGREEMENT

This Retention Agreement ("Agreement") is between 63 Spring Lafayette LLC ("Debtor") and Northgate Real Estate Group ("Northgate"). Debtor retains Northgate as its sole and exclusive special real estate advisor, with the exclusive and irrevocable right and authority to sell or work out a resolution on all or any portion of the real property and/or air rights pertaining to 63 Spring Street, New York, NY 10012 (the "Property").

1. Subject to Bankruptcy Court approval, Northgate's retention commences on the date this Agreement is executed by both parties (the "Commencement Date") and continues for one hundred eighty (180) days from entry of the Court's approving order (the "Term"). The Term shall automatically extend for successive thirty (30) day periods unless terminated by either party upon at least thirty (30) days' prior written notice.

2. Subject to review and approval by the Bankruptcy Court of a fee application by Northgate:

    (A) Northgate will be paid a commission equal to three percent (3%) of the gross purchase price (the "Commission") upon occurrence of any of the following:

        i. Debtor sells, transfers, conveys, or enters into an agreement to sell, transfer, or convey all or any portion of the Property during the Term, whether individually, as part of a package, at auction, pursuant to a Section 363 sale, a confirmed plan of reorganization, or any other permitted process. The Commission shall be paid as a buyer's premium by the successful purchaser, separate from and in addition to the gross purchase price; or

        ii. A sale, exchange, or conveyance of the Property occurs within 180 days after the Term expires (the "Additional Period") to any person or entity (a "Prospective Purchaser") that Northgate negotiated with, to whose attention the Property was brought by Northgate, whom Northgate introduced to Debtor during the Term, or any credit bidder. A Prospective Purchaser includes any partnership, joint venture, limited liability company, corporation, trust, or similar entity that the prospective buyer represents, is affiliated with, or in which it holds an ownership, management, or beneficial interest. In such case, the Commission shall be paid by Debtor.

        iii. Northgate is entitled to its Commission regardless of whether (i) the purchaser or counterparty was first introduced by Northgate, (ii) such parties were previously known to Debtor, the Lender, or their advisors, (iii) closing occurs after the Term or Additional Period expires, or (iv) Debtor engages any other broker or advisor in connection with the transaction.

NORTHGATE
REAL ESTATE GROUP

iv. The buyer's premium shall be paid to Northgate at closing or deposited into escrow with Debtor's counsel pending Court approval, and Debtor shall promptly remit any unpaid amount upon entry of an approving order. Debtor shall include Northgate's Commission on all closing statements, irrevocably direct any closing, escrow, or title agent to disburse the Commission in full, and include payment provisions for Northgate's fees and expenses in any sale motion, bidding procedures order, sale order, plan, or other transaction document, using commercially reasonable efforts to obtain any necessary lender carve-out or consent.

(B) If Debtor enters into a sale contract that would entitle Northgate to a Commission, and the Bankruptcy Court approves a higher or better offer, Northgate is entitled to its Commission from the successful purchaser based on that purchaser's gross purchase price, as and when closing occurs.

(C) Notwithstanding the foregoing, if Lender is the successful purchaser by credit bid at a bankruptcy or foreclosure sale and closes on the purchase, Lender shall pay Northgate a commission equal to two and one half percent (2.5%) of its bid. If an assignee of Lender not affiliated with Lender closes on a credit bid made by the lender or is the successful purchaser, such assignee shall pay a buyer's premium of three percent (3%) of the gross purchase price.

(D) Any sale contract and any bidding procedures order require that the full buyer's premium be placed in escrow with the non-refundable deposit. If the successful purchaser fails to close by the Bankruptcy Court-ordered deadline, the buyer's premium shall be paid to and retained by Northgate.

(E) In connection with any resolution other than a sale, including any settlement, restructuring, refinancing, deed in lieu of foreclosure, or payoff (each, a "Resolution"), occurring during the Term or the Additional Period, Northgate shall be entitled to a fee equal to three hundred thousand dollars ($300,000). Such fee shall be payable by Debtor in addition to all amounts required to satisfy the Loan, and no Resolution shall be consummated without provision for payment of Northgate's fee at closing. Debtor hereby directs any party disbursing funds or effecting consideration in connection with a Resolution to pay Northgate's fee from such proceeds or concurrently therewith.

3. All inquiries, offers, and communications regarding the Property shall be referred to Northgate. Debtor shall conduct all negotiations exclusively through Northgate and shall notify all interested parties of Northgate's exclusive authority. Pursuant to Section 504 of the Bankruptcy Code, any court-approved commission is payable solely to Northgate and may not be shared. Any other broker claiming involvement must look solely to its own client for compensation; Northgate bears no responsibility for any such fees. Any buyer's premium payable to Northgate is separate from

NORTHGATE
REAL ESTATE GROUP

and in addition to any purchaser-side brokerage arrangement and shall not be shared on account thereof.

4. Debtor will reimburse Northgate's reasonable out-of-pocket expenses, including marketing, advertising, travel, postage, and courier fees, at closing, or upon invoice if the Property is not sold. This reimbursement right is separate from any fee or commission owed hereunder.

5. Promptly after executing this Agreement, Debtor will file an application and proposed order seeking Bankruptcy Court approval of Northgate's retention pursuant to Section 327(a) of the Bankruptcy Code, with a complete copy of this Agreement attached. The application and proposed order must be acceptable to Northgate and shall provide that the approving order: (a) exempts Northgate from maintaining time records; (b) finds the terms of this Agreement reasonable; (c) treats unpaid commissions, fees, and expenses as administrative claims under Section 507(a)(1); and (d) approves Northgate's compensation pursuant to Section 328(a) of the Bankruptcy Code.

6. If Debtor obtains authorization for cash collateral use or DIP financing requiring a budget, Debtor shall include line items for all amounts payable to Northgate hereunder. All such amounts shall be included in the professional fee carve-out and shall not be subject to reduction, offset, or reallocation without Northgate's prior written consent.

7. This Agreement may not be modified, assigned, or rescinded except by a writing signed by both parties, and once approved by the Bankruptcy Court, shall be binding on Debtor and all of its affiliates, representatives, successors, and assigns. Debtor shall incorporate this Agreement into any sales contract for the Property. Debtor's obligations hereunder, including payment of Northgate's commission and fees, survive any dismissal, conversion, or termination of Debtor's bankruptcy case.

8. Debtor will promptly deliver to Northgate all financial and other information requested in connection with Northgate's performance hereunder, including title reports, engineering and environmental reports, building plans, surveys, income and expense statements, lease summaries, and rent rolls. All information provided will be, to Debtor's knowledge, accurate and complete in all material respects, and Debtor shall promptly notify Northgate in writing of any material inaccuracy or change. Debtor shall disclose to Northgate all existing and new liens or encumbrances and any known building code violations, environmental hazards, or regulatory violations. Any environmental reports shall be shared with Northgate promptly upon receipt, and Northgate is authorized to disseminate them to prospects. Northgate may rely without independent verification on all information provided by Debtor and bears no responsibility for any inaccuracies therein. Upon request, Debtor shall provide within two (2) business days all information relating to any sale or Resolution, including the identity and source of all parties involved.

NORTHGATE
REAL ESTATE GROUP

9. To the fullest extent permitted by law, Debtor will indemnify and hold harmless Northgate and its employees (each, a "Covered Person") from any losses, claims, liabilities, expenses, judgments, fines, and settlements arising out of or relating to this Agreement or Northgate's performance hereunder, except to the extent attributable to such Covered Person's gross negligence, willful misconduct, or willful breach of this Agreement. This obligation survives termination of this Agreement and any dismissal, conversion, or termination of Debtor's bankruptcy case.

10. All indemnification, contribution, or reimbursement requests shall be submitted to the Bankruptcy Court by application and are subject to Court approval confirming conformance with this Agreement and reasonableness. No such payment shall be made to the extent the Court determines any claim resulted from Northgate's gross negligence or willful misconduct.

11. Debtor shall promptly notify Northgate of any offer, inquiry, or expression of interest received with respect to the Property or the loan held by lender (the "Loan") and shall keep Northgate informed of all material developments relating to any potential sale or Resolution.

12. All commissions and fees shall be paid by wire transfer or official bank or certified check, subject to Bankruptcy Court approval. Fees payable at closing shall be paid contemporaneously therewith; if a transaction closes prior to Court approval, payment shall be made within seventy-two (72) hours following entry of an approving order. Time is of the essence for all payments. Debtor shall include Northgate's fee on any settlement, payoff, or closing statement as a condition to closing, and Northgate may seek injunctive relief to enforce this requirement.

13. Each party shall deal fairly with the other and shall not interfere with the other's ability to perform its obligations or receive the benefits of this Agreement, before or during the closing of any sale of the Property.

14. Should the Bankruptcy Court order a sale of the Property at auction, Northgate is authorized to act as the auctioneer or can elect to work with another auctioneer or auction site, and all terms will remain the same.

15. Debtor represents and warrants to Northgate that:

    a. Upon Bankruptcy Court approval, Debtor will have full right, power, and authority to retain Northgate, and this Agreement will constitute a valid, legally binding obligation of Debtor, enforceable in accordance with its terms.

    b. To the best of Debtor's knowledge and unless previously disclosed, Debtor holds (and will hold through any sale) good and marketable or insurable title to the Property.

NORTHGATE
REAL ESTATE GROUP

c. If Debtor reaches an agreement with a third party to refinance, borrow against, recapitalize, or sell the Property, Debtor will use best efforts to obtain all required approvals from the Bankruptcy Court or any other applicable authority without delay.

16. Northgate and its affiliates, officers, directors, employees, and agents shall not be liable to Debtor, its security holders, or creditors for any matter arising out of or related to Northgate's retention or performance hereunder, except to the extent found by final judgment of a court of competent jurisdiction to involve bad faith, gross negligence, or willful misconduct.

17. All fees payable to Northgate hereunder shall be free and clear of any liens, claims, offsets, setoffs, defenses, or counterclaims, including the liens of any secured creditor of Debtor. Northgate shall have no responsibility for any other broker's fees or commissions in connection with any disposition, refinancing, payoff, or recapitalization.

18. Debtor's obligations hereunder survive any change in control of Debtor. If a trustee in bankruptcy is appointed, this Agreement remains in full force and effect.

19. Debtor and its principals, officers, members, and managers shall not cause or permit the dissolution, winding up, or liquidation of Debtor, or distribution of Debtor's assets or funds prior to satisfaction or securing of Northgate's fees and expenses under this Agreement. Any in-court or out-of-court Sale or Resolution involving the Property or Loan shall require provision for the simultaneous payment or escrow of Northgate's applicable fees, and no such transaction shall be deemed complete absent such provision. Any action taken in violation of the foregoing shall constitute a material breach entitling Northgate to injunctive relief without bond, in addition to all other available remedies. Debtor shall use commercially reasonable efforts to notify Lender of Northgate's retention and fee rights under this Agreement and to provide for recognition and payment of Northgate's applicable fees in connection therewith. This paragraph, and Agreement in whole shall survive any dismissal, conversion, or termination of Debtor's bankruptcy case.

20. The Bankruptcy Court shall retain jurisdiction over all disputes relating to this Agreement. If Debtor's bankruptcy case is dismissed, or the automatic stay is lifted or modified and the Property is not disposed of under Bankruptcy Court jurisdiction, disputes shall be resolved in the New York State Supreme Court, County of New York, Commercial Division.

21. Northgate and its affiliates may advise or provide services to other industry participants, including competitors of Debtor. Debtor and its directors, officers, members, and principals waive any right to assert any claim against Northgate or its affiliates arising out of such activities.

22. Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service):

NORTHGATE
REAL ESTATE GROUP

<u>If to Debtor</u>:

______________________
______________________
______________________
______________________

<u>If to Northgate:</u>

Northgate Real Estate Group
1633 Broadway, 46th Floor
New York, NY 10019
Attn: Greg Corbin

23. Signatures to this Agreement may be exchanged by hand, by e-mail, mail, fax, photo or photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

24. Each individual executing this Agreement on behalf of Debtor represents that he or she is authorized to do so and agrees not to knowingly take or permit any action in bad faith intended to circumvent Northgate's rights to compensation under this Agreement, including through any transfer, dissolution, liquidation, or restructuring designed primarily to avoid payment of approved fees or commissions. In the event of any such intentional bad-faith conduct, Northgate shall retain all rights and remedies available under applicable law.

25. This Agreement is subject to approval by the United States Bankruptcy Court. If such approval is not obtained within sixty (60) days following the filing of the retention application, or such later date as the Court may determine, this Agreement may be terminated by Northgate upon written notice, and Northgate shall be entitled to an allowed quantum meruit claim for services rendered. This Agreement is governed by the laws of the State of New York, without regard to conflict of law principles. This paragraph shall survive termination of this Agreement.

If the foregoing accurately sets forth our agreement, please sign below and return this Agreement to Northgate. This Agreement constitutes the entire agreement between the parties on this subject matter and supersedes all prior discussions. Its terms may not be modified except by signed written document. This Agreement shall be deemed jointly drafted with no presumption against either party as drafter. Each party acknowledges that it has had the opportunity to review this Agreement with counsel before executing.

NORTHGATE
REAL ESTATE GROUP

| | |
|---|---|
| Company Name: 63 Spring Lafayette LLC | Northgate Real Estate Group, LLC |
| Principal Name: Jack Terzi | Greg Corbin |
| Title: ____________________ | President |
| Authorized signature: ____________________ | Authorized signature: ____________________ |
| Date: 06/30/26 | Date: 6/16/2026 |